**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Thomas HALLIDAY (80–5195), Terry Street (80–5196), Donald Frank (80–5197), William H. Gallagher (80–5207), Defendants-Appellants.**

Nos. 80–5195, 80–5196, 80–5197 and 80–5207.

United States Court of Appeals, Sixth Circuit.

Argued June 8, 1981.

Decided and Filed Sept. 16, 1981.

Gerald L. White (court appointed), Midland, Mich., for Thomas Halliday.

Robert Rhead (court appointed), Midland, Mich., for Terry Street.

George C. Bush (court appointed), Saginaw, Mich., for Donald Frank.

C. Michael Gorte (court appointed), Saginaw, Mich., for William H. Gallagher.

Richard A. Rossman, U. S. Atty., Bay City, Mich., Ellen Ritteman, Asst. U. S. Atty., Detroit, Mich., for plaintiff-appellee.

Before ENGEL and JONES, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

NATHANIEL R. JONES, Circuit Judge.

Terry Street, Thomas Halliday, Donald Frank and William Gallagher appeal from their convictions. All four defendants were convicted of aiding and abetting in the submission of fraudulent loan applications for nonexistent automobiles to a federally-insured bank in violation of 18 U.S.C. §§ 1014 and 2(a). Gallagher was also convicted on a related conspiracy charge. 18 U.S.C. § 371. We affirm.

## I.

Dale Gullifor owned a used car lot in Saginaw, Michigan. When a customer desired to purchase a car on credit, a salesman would record certain information on a bank application form. The form was sent to a bank officer who checked the prospective customer's credit and issued a loan if the credit information was satisfactory.

Gullifor employed Gallagher as a salesman. At the trial, Gullifor testified that Gallagher prepared fraudulent loan applications for both Street and Halliday. Frank personally applied for his car loan at the bank. The day the loan was granted, however, Gullifor saw Gallagher and Frank sitting in the car lot office with empty money wrappers on the table. Gallagher signed Gullifor's name to the bank check for the loan proceeds and later admitted to Gullifor that the money wrappers involved another "phony deal." Frank subsequently complained to Gullifor in Gallagher's presence that Gallagher had not been making the loan payments as agreed.

On December 6, 1979, Gallagher was arrested in connection with the fraudulent bank loans. At that time he informed interviewing FBI agents of his wish to remain silent. Attorney Jerome Burns was appointed to represent Gallagher.

A few days later, believing that Gallagher had retained C. Michael Gorte to represent him, FBI agents contacted Gorte and asked his permission to reinterview Gallagher. Gorte told the FBI agents that he had no objection, but since Gorte was not yet attorney of record, he referred the agents to then-attorney of record Burns. The FBI, however, did not contact Burns. Instead the agents obtained Gallagher's written acknowledgment that his attorney was Gorte, and that he did not wish appointed counsel. The FBI then advised Gallagher of his rights and secured a written waiver of those rights. During the interrogation which followed, Gallagher made incriminating statements which were used at his trial.

## II.

On appeal, Gallagher contends that the FBI's reinitiation of interrogation after his request for counsel violated his Fifth Amendment rights. For this contention he relies on *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). *Edwards*, however, is inapposite.

In *Edwards*, the defendant was arrested on a state criminal charge and questioned by the police until the defendant said he wanted an attorney. Questioning then ceased, but the police resumed interrogation the next morning without providing the defendant with counsel. The defendant after being informed of his *Miranda* rights stated that he was willing to talk, and confessed to the crime. The Supreme Court held that the use of this confession against the defendant at trial violated his right to have counsel present during custodial interrogation. The Court rejected the argument

that the defendant waived his right by his response to the second police-initiated interrogation. It held that once an accused expressed a desire to deal with the police only through counsel, he is not subject to further interrogation until counsel has been made available to him, unless the accused has himself initiated further communications with the police.

*Edwards* emphasizes the necessity of counsel being made "available" or of the defendant having "access" to counsel, 451 U.S. 484–87, 101 S.Ct. at 1885, 1886, rather than holding that once the accused requests counsel he may thereafter be questioned only in the *presence* of counsel. Here Gallagher had access to two attorneys. Court-appointed counsel was made available to him, and in addition he retained and spoke with private counsel. Thus the FBI did not impermissibly initiate a second interrogation after defendant requested counsel.[1]

Gallagher also contends that he was uncertain about his legal representation and therefore his waiver of counsel was not voluntary, knowing and intelligent. *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). We reject this contention. Gallagher testified at the hearing that he had been employed by a law firm dealing in civil law and had been convicted of two felonies in federal court. He clearly indicated to the agents that his attorney was Gorte; he exhibited no confusion; and he declined appointed counsel. In view of his signed statements and waivers, and the totality of the circumstances, we conclude that his decision to speak with the agents was voluntary, knowing and intelligent.

■ At trial Gullifor testified that Frank had complained to him about Gallagher's failure to make payments on the loan to Frank. A bank officer also testified that

when he spoke to Frank about the overdue loan payments, Frank declared that Gallagher "had gotten him into a mess." Since Frank did not take the stand, Gallagher asserts that the admission of this testimony requires reversal of his conviction under *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). We disagree.

*Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), held that a *Bruton* error does not require reversal if the error was harmless beyond a reasonable doubt. In *Schneble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972), the defendant confessed to a murder, but appealed his conviction on the ground that the admission of the confession of a nontestifying codefendant violated *Bruton*. The Court held that in light of the overwhelming evidence of the defendant's guilt as manifested by his confession, and the comparatively insignificant effect of the co-defendant's confession, any *Bruton* error which may have occurred was harmless beyond a reasonable doubt.

In this case, there was overwhelming evidence, apart from Frank's statements, to establish Gallagher's guilt. The evidence included Gallagher's own confession to the FBI that he had participated in the submission of fraudulent loan applications as well as extensive testimony by Gullifor to the same effect. In light of the overwhelming evidence of guilt supplied by the testimony of Gullifor and the confession of Gallagher, the *Bruton* error, if any, was harmless beyond a reasonable doubt.

■ Frank contends that the evidence is insufficient to support his conviction. We believe that the evidence was ample for the jury to conclude that Frank knowingly made a false statement for the purpose of influencing the action of a federally-insured

---

1. *Edwards* was decided on May 18, 1981. The trial of the case before us commenced on April 24, 1980. These dates suggest another reason for finding the rule of *Edwards* inapplicable to the present case. *Cf., Johnson v. New Jersey*, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966) (*Escobedo v. Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) and *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) held to apply only to cases where the trials have commenced after the decisions were announced). But in light of our view that the rule of *Edwards* has no application to the facts before us, we need not decide whether the rule should be limited to prospective application.

bank. Though Frank emphasizes that no evidence was offered to identify as his handwriting the signature "Donald Frank" on the installment note and security agreement, the note was not the only evidence of his participation. Gullifor testified that a fraudulent loan application was processed in Frank's name, and that he saw Gallagher and Frank sitting at a table with empty money wrappers on the day the loan was issued. Gullifor also testified that Frank acknowledged his participation in securing the loan and complained of Gallagher's failure to make payments as agreed. We find this evidence sufficient to sustain the conviction of Frank.

We have examined the other contentions of the defendants and they are without merit.

AFFIRMED.