901 F.2d 64
 David Roy HARRIMAN, Petitioner-Appellant,
v.
Bruce LYNN, Secretary of the Louisiana Department of
Corrections: John P. Whitley, Warden of the Louisiana State
Penitentiary at Angola, Louisiana and, the Honorable William
J. Guste, Jr., Attorney General of the State of Louisiana,
Respondents.
 No. 89-4286.
 United States Court of Appeals,
Fifth Circuit.
 May 15, 1990.
Rehearing Denied June 11, 1990.
 
 Darrell D. Cvitanovich, John Jewell Pace, Baton Rouge, La., for petitioner-appellant.
 Richard A. Sherburne, Jr., Joseph T. Mickel, James Norris, Earl Cox, Dist. Attys.
 Wm. Guste, Atty. Gen., Baton Rouge, La., for respondents.
 Appeal from the United States District Court for the Western District of Louisiana.
 Before CLARK, Chief Judge, and THORNBERRY and JONES, Circuit Judges.
 EDITH H. JONES, Circuit Judge:
 
 
 1
 Appellant David Roy Harriman appeals the order of the district court denying his application for writ of habeas corpus. Harriman attacks his murder conviction on the ground that he confessed following improper custodial interrogation in violation of Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). Because this case is governed by Arizona v. Roberson, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988), and Butler v. McKellar, --- U.S. ----, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990), we reject Harriman's contention and affirm the judgment of the district court.
 
 I.
 FACTS
 
 2
 On May 11, 1982, a Racetrac Gasoline Station attendant was killed in an armed robbery in West Monroe, Louisiana (the "Racetrac crime").[1] Police received a report from a person who had stopped at the station and apparently witnessed the incident. This person told the police that at approximately 2:00 a.m., he saw a white male wearing a white shortsleeve shirt at the counter inside the station and observed someone who he believed was the attendant lying on the floor of the station. The witness also reported that he saw the suspect enter a gold colored vehicle, leave the station, and travel toward the interstate.
 
 
 3
 Investigating the report, West Monroe police arrived at the station and observed a man matching the description provided by the witness exit the west side of the station, enter a gold Chevrolet, and leave the scene. Based on his license number, Harriman was stopped shortly afterward in this vehicle.
 
 
 4
 Harriman was advised of his Miranda rights and taken to the West Monroe Police Department, where he was formally placed under arrest for armed robbery and first degree murder. Placed in an interrogation room, he was again informed of his rights and executed a written waiver. During the ensuing interrogation, Harriman stated that he had stopped at the station for gasoline, seen the attendant lying on the floor and was leaving the station when he was observed by police. Harriman denied being at the scene five minutes earlier. Harriman subsequently invoked his right to counsel and interrogation ended. Harriman was placed in a holding cell in the West Monroe Police Department.
 
 
 5
 A few hours later, around 1:00 p.m., Corporal Via and Sergeant Fewell of the Ouachita Parish Homicide Task Force wanted to question Harriman about an incident unrelated to the Racetrac crime. The task force officers were located in the West Monroe police department building. Via and Fewell were not investigating the Racetrac crime and maintained that they were unaware that the defendant had invoked his right to counsel and they made no inquiry in that regard. Via and Fewell had Harriman brought to an interrogation room and advised him of his Miranda rights, which he waived by executing a written waiver that related to homicides in general. The officers asked Harriman background questions about his education, his ability to read and write, and whether he was under the influence of drugs or alcohol. At this point, Harriman asked the officers why he had been arrested. The officers informed him that they had little if any information about that subject, but that they understood it was because he had been seen in the vicinity of a recent homicide. They further told him that if he wanted more information it would be necessary to discuss it with the officers investigating that offense.
 
 
 6
 Harriman then stated that he wished to talk to the officers investigating the Racetrac case. Fewell then requested that Sergeant Norris, a West Monroe officer in the vicinity of the homicide scene investigating the Racetrac case, come to the interrogation room. When Sergeant Norris arrived, Via again read Harriman his Miranda rights. In response to Via's question whether he wished to talk to officers without an attorney present, Harriman expressed his willingness to do so because he wanted "to cooperate" and did not want an attorney. Sergeant Norris, who had been present when the defendant originally invoked his right to counsel, and who was the only officer present who was aware of this invocation, did not ask Harriman about his previous invocation of counsel.
 
 
 7
 In response to questions posed by Via about the Racetrac crime, Harriman gave some inconsistent answers about some money he possessed at the time of his arrest. When Via expressed doubt as to Harriman's answers, Harriman became nervous. Via then asked Harriman if he had killed the attendant. Harriman confessed, made incriminating statements, and told the officers the location of the murder weapon. His statements were admitted at trial. Harriman's conviction became final in 1986.
 
 II.
 HABEAS CORPUS REVIEW
 
 8
 Harriman asserts that his confession violated specific procedural rules created by the Supreme Court to guide police and prosecutors as to permissible custodial interrogation in compliance with the fifth amendment. See, e.g., Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981); Arizona v. Roberson, 486 U.S. 675, 681, 108 S.Ct. 2093, 2098, 100 L.Ed.2d 704 (1988). In 1981, the Court held that the accused, "having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." Edwards v. Arizona, 451 U.S. at 484-85, 101 S.Ct. at 1885. The re-interrogation prohibited in Edwards came at the insistence of the police and involved the same investigation for which the suspect was arrested and had previously invoked a right to counsel. 451 U.S. at 485, id. at 1885. Seven years later, Arizona v. Roberson[2] held that police may not conduct interrogation after a suspect invokes his right to counsel until counsel has been made available to him, even if the subsequent interrogation involved a matter unrelated to defendant's arrest, unless the suspect initiates further communication, exchanges, or conversation.
 
 
 9
 Roberson is factually analogous to this case, but because the scope of review we may exercise over state convictions in habeas corpus is confined by the demands of federalism,[3] Roberson does not apply. The Supreme Court recently explained that "new rules" of constitutional law "will not be applied or announced in cases on collateral review," with two narrow exceptions. Penry v. Lynaugh, 492 U.S. ----, ----, 109 S.Ct. 2934, 2944, 106 L.Ed.2d 256 (1989) (citing Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989)). A "new rule" "breaks new ground or imposes a new obligation on the States or the Federal Government,"[4] or has been announced "if the result was not dictated by precedent existing at the time the defendant's conviction became final." Teague, 489 U.S. at ----, 109 S.Ct. at 1070 (emphasis in original). A few weeks ago, addressing the precise question whether Roberson's application of the prophylactic Edwards rule to an interrogation for a crime other than that for which the suspect was in custody constituted a "new rule," the Court observed that "the outcome in Roberson was susceptible to debate among reasonable minds," as evidenced by differing decisions in the lower courts. Butler, 110 S.Ct. at 1217. Butler appears to clarify the Court's intention that habeas corpus will not henceforth be a vehicle for overturning convictions that were obtained according to then-prevailing constitutional standards, nor will it break ground for novel constitutional claims. The Court accordingly concluded that Roberson announced a "new rule" that could not be invoked by a state habeas petitioner whose conviction became final before 1988.[5] And so it is here.
 
 
 10
 Realizing, perhaps, that Roberson might not apply retroactively to his case, Harriman's brief disclaimed reliance on Roberson altogether and argued instead that Edwards, decided before the Racetrac crime, foreclosed his custodial interrogation, following invocation of the right to counsel, by officers from a different jurisdiction about a different crime. This argument flouts the retroactivity analysis of Butler, however, for there would be little point in declaring that Roberson announced a "new rule" if, on the same facts as those in Roberson, a court then held that Edwards earlier compelled the issuance of the writ. Harriman, in other words, asks us to review a case on all fours with Roberson as if Roberson and Butler had never been decided. Neither logic nor precedent supports our engaging in such a surrealistic calculus, and we decline to do so.
 
 
 11
 In the ordinary case, having determined that a "new rule" was unavailable to a habeas petitioner, we would review his contentions according to the constitutional standards applicable when his conviction became final. See, e.g., Butler v. Aiken, 846 F.2d 255, 258-59 (4th Cir.), denying petition for rehearing, 864 F.2d 24, 25 (4th Cir.1988) (where Roberson did not retroactively apply, conviction reviewed under prior law), aff'd sub. nom. Butler v. McKellar, 110 S.Ct. at 1218. Thus, we would examine Edwards notwithstanding Roberson if, for example, we confronted a question of the effectiveness of a petitioner's original waiver of rights or whether he "initiated" a later discussion with the police. Because Harriman's claim, however, rests upon precisely the same facts that suggested an extension of Edwards and resulted in the Roberson decision, the "new rule" is the only rule under which Harriman can find succor. If precedent means anything, then Butler's denial of relief must govern Harriman's case.
 
 
 12
 Because the application of Edwards is in this case governed by Roberson and by Butler, which held that Roberson does not apply retroactively, the judgment of the district court denying habeas corpus relief is AFFIRMED.
 
 
 
 [1]
 The statement of facts that we recite are taken from the Louisiana appeals court that affirmed the district court's order overruling a suppression motion. See State v. Harriman, 434 So.2d 551, 553 (La.Ct.App. 2d Cir.1983), writ denied, 440 So.2d 729 (La.1983). On motions for federal habeas corpus relief under 28 U.S.C. Sec. 2254, the state court's findings of fact are entitled to a presumption of correctness. 28 U.S.C. Sec. 2254(d). "Section 2254(d) by its terms thus applies to factual determinations made by state courts, whether the court be a trial court or an appellate court. This interest in federalism recognized by Congress in enacting Sec. 2254(d) requires deference by federal courts to factual determinations of all state courts." Sumner v. Mata, 449 U.S. 539, 546-47, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981) (citations omitted)
 
 
 [2]
 486 U.S. 675, 108 S.Ct. 2093, 2099, 100 L.Ed.2d 704 (1988)
 
 
 [3]
 "In many ways the application of new rules to cases on collateral review may be more intrusive than the enjoining of [state] criminal prosecutions ... for it continually forces the States to marshal resources in order to keep in prison defendants whose trials and appeals conformed to then-existing constitutional standards." Butler v. McKellar, 110 S.Ct. at 1216-17 (emphasis in original) (quoting Teague v. Lane, 489 U.S. 288, ----, 109 S.Ct. 1060, 1075, 103 L.Ed.2d 334 (1989))
 
 
 [4]
 Butler v. McKellar, --- U.S. ----, 110 S.Ct. at 1216 (citing Penry, 492 U.S. at ----, 109 S.Ct. at 2944)
 
 
 [5]
 The Court also held in Butler that the two exceptions to the "new rule" doctrine did not apply to Roberson to permit its retroactive application. Thus, Roberson did not establish a rule that deprived the State of authority to convict, nor did it fundamentally affect the truth-seeking mission of the investigation or prosecution. See Butler, 110 S.Ct. at 1218