943 F.2d 1020
 60 USLW 2207
 Randy GREENAWALT, Petitioner-Appellee,
v.
James R. RICKETTS, Director, Arizona DOC; Donald
Wawrzaszek, Superintendent, ASP; Robert K.
Corbin, Attorney General, State of
Arizona, Respondents-Appellants.
 Nos. 88-1828, 88-1910.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 8, 1991.
Decided Aug. 22, 1991.
 
 Bruce M. Ferg, Asst. Atty. Gen., Tucson, Ariz., for respondents-appellants.
 Cameron C. Artigue, Gammage & Burnham, Phoenix, Ariz., for petitioner-appellee.
 Appeal from the United States District Court for the District of Arizona.
 Before WALLACE, Chief Judge, and ALARCON and WIGGINS, Circuit Judges.
 WALLACE, Chief Judge:
 
 
 1
 During a brief period of freedom following his escape from an Arizona state prison, Greenawalt kidnapped three people, murdered four, committed two armed robberies, and stole a motor vehicle. After confessing to some of these crimes, he was convicted and sentenced to death, and his conviction and sentence were affirmed on direct appeal, more than a decade ago. See State v. Greenawalt, 128 Ariz. 150, 624 P.2d 828 (en banc) (Greenawalt I), cert. denied, 454 U.S. 882, 102 S.Ct. 364, 70 L.Ed.2d 191 (1981); see also State v. Greenawalt, 128 Ariz. 388, 626 P.2d 118 (en banc) (affirming conviction including assault and unlawful flight), cert. denied, 454 U.S. 848, 102 S.Ct. 167, 70 L.Ed.2d 136 (1981).
 
 
 2
 Greenawalt then petitioned for a writ of habeas corpus. The district court denied this petition, but Greenawalt appealed and we ordered a limited remand in light of Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) (holding that once accused requests counsel, police-initiated interrogation must cease until counsel is made available). See Greenawalt v. Ricketts, 784 F.2d 1453, 1456 (9th Cir.) (Greenawalt III), cert. denied, 479 U.S. 890, 107 S.Ct. 290, 93 L.Ed.2d 264 (1986). The district court granted the petition on remand, and the state then appealed.
 
 
 3
 In their second appearance before this court, the parties initially confined their briefing to the Edwards issue. We ordered full briefing, however, since the issues not remanded remain before us from the first appeal. See id. We now consider the entire petition. The district court had jurisdiction pursuant to 28 U.S.C. § 2254. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 2253. We affirm in part and reverse in part.
 
 
 4
 * Our prior opinion describes the facts in great detail. See Greenawalt III, 784 F.2d at 1454-56; see also Greenawalt I, 128 Ariz. at 154-55, 624 P.2d at 832-33. Our description here will be brief.
 
 
 5
 Greenawalt was already serving a life sentence for murder when he escaped from prison with Tison, a fellow prisoner, aided by Tison's three sons. The entire group left the prison after the Tison sons, while ostensibly visiting their father, carried an ice chest full of firearms into the prison visitation area. They remained at large for almost two weeks. They kidnapped and then killed John and Donnelda Lyons, and the couple's niece, Theresa Tyson. They also killed the Lyonses' two-year-old son, Christopher. Gun shells and fingerprints later linked the escapees and their companions to the murders of all four victims.
 
 
 6
 Greenawalt and two of Tison's sons were captured after a high speed chase during which Tison's third son was shot dead. Tison himself, who eluded capture, was subsequently found in the desert dead of exposure.
 
 
 7
 Upon taking Greenawalt into custody, the police gave him a pat-down search, handcuffed him, and placed him in the back of a pickup truck. They later strip-searched him and retained his clothing as evidence. The police initially left Greenawalt naked in the back of the truck, but after a short while he was given a blanket and put in a police sedan.
 
 
 8
 The police then explained the Miranda rights to Greenawalt and requested that he make a statement. Greenawalt refused and asked for counsel. The interrogation immediately ceased, but Greenawalt was later approached by other law enforcement and corrections officers. Greenawalt confessed to some of these officers but not others. Officers explained his Miranda rights, and he repeatedly invoked his right to counsel.
 
 
 9
 At some point Greenawalt was taken to jail, and after his arrival he spoke briefly with his counsel. Greenawalt was then returned to his cell and some time later, after another Miranda warning, Greenawalt again confessed.
 
 
 10
 The state trial judge excluded the earlier confessions but admitted the final one.
 
 II
 
 11
 Greenawalt contended that his confessions were obtained in violation of his fifth amendment right to counsel, and that the admission of his final confession at trial required his petition be granted. The district court agreed, holding that Edwards requires the exclusion of any confession given in response to police interrogation outside the presence of counsel once counsel has been requested. The district court held that by admitting Greenawalt's final confession, the state trial court failed to comply with Edwards, since this confession was obtained outside the presence of counsel and after Greenawalt's request.
 
 
 12
 The district court's interpretation of Edwards has since been ratified by the Supreme Court in Minnick v. Mississippi, --- U.S. ----, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990) (Minnick). The facts in Minnick are strikingly similar to those of the present case. Minnick murdered two people following his escape from jail. He was eventually apprehended and then interrogated by federal law enforcement officials. Though the interrogation ceased when Minnick requested counsel, after Minnick conferred with counsel the interrogation resumed outside the presence of counsel. Minnick confessed. His confession was admitted at trial, and he was convicted. The Supreme Court reversed, holding that any confession given in response to police interrogation outside the presence of counsel, once counsel had been requested, may not be introduced at trial unless the defendant himself had reinitiated the communication. Id. 111 S.Ct. at 491-92.
 
 
 13
 The district court's holding comports with Minnick. If this were on direct review, we would affirm. But it is not, and the Supreme Court has limited the power of federal courts to impose new constitutional commands in collateral proceedings.
 
 A.
 
 14
 In Teague v. Lane, a plurality of the Supreme Court stated that new rules generally would not be retroactively applied to cases on collateral review. Teague v. Lane, 489 U.S. 288, 310, 109 S.Ct. 1060, 1074-75, 103 L.Ed.2d 334 (1989) (Teague) (O'Connor, J., plurality opinion) (rejecting the retroactivity analysis of Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965)). This position has since been affirmed by a majority of the Court, and expressly extended to capital, as well as noncapital cases. Saffle v. Parks, 494 U.S. 484, 110 S.Ct. 1257, 1259-60, 108 L.Ed.2d 415 (1990) (Saffle); Butler v. McKellar, 494 U.S. 407, 110 S.Ct. 1212, 1214, 108 L.Ed.2d 347 (1990) (Butler); Penry v. Lynaugh, 492 U.S. 302, 314, 109 S.Ct. 2934, 2944, 106 L.Ed.2d 256 (1989) (Penry). Teague also observed that new rules generally would not be announced in cases on collateral review. Teague, 489 U.S. at 316, 109 S.Ct. at 1078. This analysis, too, has been subsequently affirmed by a majority of the Court. Penry, 492 U.S. at 313, 109 S.Ct. at 2943-44.
 
 
 15
 Recognizing that Minnick raises a retroactivity question, we ordered supplemental briefing. In its supplemental brief, the State contends that Minnick announced a new rule precluded from retroactive application to this collateral review. In response, Greenawalt contends that he does not seek the benefit of Minnick, but rather, as the district court held, merely the benefit of Edwards.
 
 
 16
 Greenawalt raises an interesting contention, but we do not accept it. The district court's Edwards analysis directly parallels the Supreme Court's ruling in Minnick. Therefore, if Minnick announced a new rule, the district court did so as well. See Harriman v. Lynn, 901 F.2d 64, 67-68 (5th Cir.1990) (rejecting similar argument when considering retroactivity of Arizona v. Roberson by stating that, "there would be little point in declaring that Roberson announced a new rule, if, on the same facts as those in Roberson, a court held that Edwards earlier compelled [relief].").
 
 
 17
 A new rule may not be announced on collateral review any more than it can be applied on it. Penry, 492 U.S. at 313, 109 S.Ct. at 2943-44; Teague, 489 U.S. at 316, 109 S.Ct. at 1078. This principle applies equally to all levels of the federal judiciary; a new rule announced by a district court can have no greater retroactive effect than one announced directly by the Supreme Court. Whether we focus on Minnick or the district court's holding, the question remains the same: is this a new rule precluded from retroactive application on collateral review?
 
 
 18
 "In Teague, [the Supreme Court] defined a new rule as a rule that 'breaks new ground,' 'imposes a new obligation on the States or the Federal Government,' or was not 'dictated by precedent existing at the time the defendant's conviction became final.' " Saffle, 110 S.Ct. at 1260, quoting Teague, 489 U.S. at 301, 109 S.Ct. at 1070 (emphasis in Teague). The breadth of this definition was demonstrated by Butler, where the Court found that the rule announced by Arizona v. Roberson, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988) (Roberson), was new for purposes of the retroactivity analysis.
 
 
 19
 In Roberson, the Court held that an Edwards request regarding any charge invokes the right to counsel with regard to all. Id. at 675-76, 108 S.Ct. at 2093-95. Emphasizing that Edwards had created a "bright-line rule," the Court in Roberson stated that prohibiting all police-initiated interrogation once the accused requests counsel "follows ... from Edwards and Miranda." Id. at 681, 684, 108 S.Ct. at 2097-98, 2099-2100. Based on this language, the petitioner in Butler argued that Roberson did not create a new rule, and was merely an application of Edwards to a new set of facts. Butler, 110 S.Ct. at 1217.
 
 
 20
 The Court rejected this argument. In doing so, it placed no reliance on Roberson's self-description as declining "to craft an exception to [Edwards]." Roberson, 486 U.S. at 677, 108 S.Ct. at 2096. Instead, the Court directed its attention to the prior existence of reasonably contrary interpretations of Edwards.
 
 
 21
 Courts frequently view their decisions as being "controlled" or "governed" by prior opinions even when aware of reasonable contrary conclusions reached by other courts.... [But i]t would not have been an illogical or even a grudging application of Edwards to decide that it did not extend to the facts of Roberson. We hold, therefore, that Roberson announced a "new rule."
 
 
 22
 Butler, 110 S.Ct. at 1217-18. The Supreme Court's conclusion did not depend on a survey of all antecedent case law. Rather, the existence of just two prior decisions reasonably contrary to Roberson justified its characterization as a new rule. Id., 110 S.Ct. at 1217 (relying on decisions by the Fourth and Seventh Circuits). This approach is consistent with the primary purpose of habeas corpus review, which is to encourage compliance with existing constitutional commands. Id.; Teague, 489 U.S. at 306, 109 S.Ct. at 1072-73.
 
 
 23
 Minnick is much like Roberson in all relevant respects. It is predicated on Edwards. It characterizes its holding as "an appropriate and necessary application of the Edwards rule," one which merely declines to create an exception. Minnick, 111 S.Ct. at 491. It does not ratify uniformly consistent prior case law; lower courts previously arrived at a different conclusion. For example, the decision of the Mississippi Supreme Court from which certiorari was granted in Minnick held that Edwards afforded no further protection once counsel had been made available. Minnick v. State, 551 So.2d 77, 83 (Miss.1988), rev'd, --- U.S. ----, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990). Likewise, Griffin v. Lynaugh, 823 F.2d 856, 863-64 (5th Cir.1987), cert. denied, 484 U.S. 1079, 108 S.Ct. 1059, 98 L.Ed.2d 1021 (1988), held that interrogation may proceed after the satisfaction of an Edwards request. Similarly, United States v. Halliday, 658 F.2d 1103, 1105 (6th Cir.), cert. denied, 454 U.S. 1127, 102 S.Ct. 978, 71 L.Ed.2d 115 (1981), held the police may reinitiate interrogation after the accused has been afforded an opportunity to consult with counsel. Although subsequently undone by Minnick, these interpretations of Edwards are neither illogical nor grudging, as Halliday explains:
 
 
 24
 Edwards emphasizes the necessity of counsel being made "available" or of the defendant having "access" to counsel, rather than holding that once the accused requests counsel he may thereafter be questioned only in the presence of counsel. Here Gallagher had access to two attorneys. Court-appointed counsel was made available to him, and in addition he retained and spoke with private counsel. Thus the FBI did not impermissibly initiate a second interrogation after defendant requested counsel.
 
 
 25
 Id. (citations omitted). Halliday, Griffin, and the state court decision in Minnick, while contrary to the Supreme Court's subsequent decision in Minnick, are reasonable applications of Edwards. Their existence demonstrates that Minnick was not dictated by Edwards, but rather, is an extension of it, about which reasonable courts might differ. Therefore, we hold that Minnick announced a new rule. Because the district court's holding is coextensive with it, we hold that it, too, imposed a new rule.
 
 B.
 
 26
 A new rule is generally precluded from retroactive application on collateral review. Butler, 110 S.Ct. at 1214; Teague, 489 U.S. at 310, 109 S.Ct. at 1074-75. Likewise, a new rule generally cannot be announced in a case on collateral review. Penry, 492 U.S. at 313, 109 S.Ct. at 2943-44; Teague, 489 U.S. at 316, 109 S.Ct. at 1078. This would complete our analysis of this issue, but there are two exceptions to these general principles.
 
 
 27
 The first exception allows a new rule to apply retroactively in collateral proceedings when it places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." Butler, 110 S.Ct. at 1218 (internal quotations omitted); Teague, 489 U.S. at 307, 109 S.Ct. at 1073 (internal quotations omitted). This exception is inapplicable here, because Minnick's procedural requirements do not alter the state's authority to prosecute Greenawalt for murder, kidnapping, armed robbery, and theft. See Butler, 110 S.Ct. at 1218 ("The proscribed conduct in the instant case is capital murder, the prosecution of which is, to put it mildly, not prohibited by the rule in Roberson.").
 
 
 28
 The second exception is for new rules that are "watershed rules of criminal procedure" "without which the likelihood of an accurate conviction is seriously diminished." Teague, 489 U.S. at 311, 313, 109 S.Ct. at 1075, 1077. On this issue, Butler's treatment of Roberson is again illuminating.
 
 
 29
 Because a violation of Roberson's added restrictions on police investigatory procedures would not seriously diminish the likelihood of obtaining an accurate determination--indeed, it may increase the likelihood--we conclude that Roberson did not establish any principle that would come within the second exception.
 
 
 30
 Butler, 110 S.Ct. at 1218. The second exception is likewise inapplicable here because the Supreme Court's holding in Minnick, and the district court's similar holding extend a prophylactic rule which results in the exclusion of probative trial evidence. As neither exception applies, we hold that the new rule announced by Minnick and the district court cannot be applied in this case on collateral review.
 
 C.
 
 31
 Once in custody, Greenawalt both requested counsel and repeatedly confessed his crimes. The State did not deny him counsel, and after conferring with counsel, Greenawalt again confessed. Faced with this situation, the state trial court excluded the confessions Greenawalt gave after he requested counsel and before it was made available to him, but admitted the confession given after Greenawalt spoke with counsel. The state trial court's rulings were reasonable in light of the precedent controlling on direct review, so they must be upheld on collateral review. The district court erred by imposing this new rule on collateral review. We therefore reverse the district court's holding on the Edwards issue.
 
 
 32
 This holding does not require, as Greenawalt contends, a remand for additional findings of fact. Greenawalt was provided the opportunity to overcome the presumptive correctness of the state court's findings of historical fact in the original district court proceedings, and he failed to do so. See 28 U.S.C. § 2254(d). Nothing he has said before this court convinces us that the district court erred in this regard.
 
 
 33
 Our holding also requires that we reject Greenawalt's closely related sixth amendment contention. The sixth amendment entitles the accused to counsel once "adversary judicial criminal proceedings" have been initiated, "whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." Kirby v. Illinois, 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972). The parties disagree about whether Greenawalt was charged before he was interrogated, but we need not decide this question; Greenawalt's sixth amendment claim adds nothing to his fifth amendment claim.
 
 
 34
 We recognize that the two rights are not precisely coextensive, and that in some contexts, the sixth amendment affords protection not provided by the fifth. E.g., United States v. Wade, 388 U.S. 218, 223, 87 S.Ct. 1926, 1930, 18 L.Ed.2d 1149 (1967) (recognizing sixth but not fifth amendment right to counsel at post-indictment line-up). But in the context of a custodial interrogation after the initiation of adversary judicial proceedings, we may treat the fifth and sixth amendment rights as both defined by the rule of Edwards. See Michigan v. Jackson, 475 U.S. 625, 636, 106 S.Ct. 1404, 1411, 89 L.Ed.2d 631 (1986) (applying Edwards to analyze sixth amendment right to counsel in post-arraignment interrogation). We have already decided that an extension of Edwards to this case would impermissibly impose a new rule on collateral review. This is true whether we focus on the fifth or sixth amendment as the ultimate source of the Edwards claim.
 
 III
 
 35
 In originally denying Greenawalt's petition, the district court rejected all of Greenawalt's other contentions of error. Greenawalt is entitled to a de novo determination of these contentions by us. Miller v. Vasquez, 868 F.2d 1116, 1118 (9th Cir.1989).
 
 
 36
 Greenawalt contends the confession admitted at trial was tainted by his prior inadmissible statements. His contention rests on Brown v. Illinois, 422 U.S. 590, 604-05, 95 S.Ct. 2254, 2262-63, 45 L.Ed.2d 416 (1975), in which the Supreme Court excluded a confession so tainted by a previous coerced confession so as to be coerced itself. Brown has been limited, however, to cases of actual coercion. Oregon v. Elstad, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985) (Elstad ). Because Miranda's prophylactic rule "sweeps more broadly than the Fifth Amendment itself," a voluntary confession merely inadmissible on the ground of Miranda does not taint a subsequent voluntary confession. Id. at 306, 309, 105 S.Ct. at 1291-92, 1293. "If errors are made by law enforcement officers in administering the prophylactic Miranda procedures, they should not breed the same irremediable consequences as police infringement of the Fifth Amendment itself." Id. at 309, 105 S.Ct. at 1293.
 
 
 37
 While Elstad involved a failure to give the Miranda warnings, we conclude that its holding applies to other Miranda violations. Therefore, we hold that a voluntary confession inadmissible on the ground of Edwards does not taint a subsequent voluntary confession. By so doing, we follow those circuits that have already considered the question. See United States v. Cherry, 794 F.2d 201, 207-08 & n. 6 (5th Cir.1986) (holding admissibility of derivative evidence discovered through use of statements taken in violation of Miranda), cert. denied, 479 U.S. 1056, 107 S.Ct. 932, 93 L.Ed.2d 983 (1987); Lamp v. Farrier, 763 F.2d 994, 998 n. 8 (8th Cir.), cert. denied, 474 U.S. 1009, 106 S.Ct. 534, 88 L.Ed.2d 465 (1985).
 
 
 38
 Thus, we must determine whether the earlier as well as the admitted confessions were voluntary. United States v. Wauneka, 842 F.2d 1083, 1087 (9th Cir.1988). While we determine voluntariness de novo, we do, of course, "give great weight to the considered conclusions of a coequal state judiciary." Miller v. Fenton, 474 U.S. 104, 112, 106 S.Ct. 445, 450, 88 L.Ed.2d 405 (1985). The Arizona trial court, the Arizona Supreme Court, as well as the district court, all concluded that Greenawalt's confessions were voluntary.
 
 
 39
 As to his first set of confessions, Greenawalt contends the circumstances surrounding his arrest demonstrate deliberate police coercion. He observes that his arrest followed a 12-day search and a high speed chase in which one of his companions was fatally shot. The police "swarmed" and fired "aerial flares." Greenawalt's clothes were taken from him, and his glasses were lost. He was handcuffed. This conduct is described in Greenawalt's brief as just "short of physical torture."
 
 
 40
 As the state observes, however, Greenawalt was never threatened or subjected to any kind of rough handling or harassment. The 12-day search and high speed chase are surely irrelevant; the police were not coercing Greenawalt, they were attempting to capture him. Cf. California v. Hodari D., --- U.S. ----, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) (suspect not seized within the meaning of the fourth amendment when chased). Greenawalt's glasses were lost in the crash of his getaway vehicle, and not through any police action. His clothes were taken for a legitimate reason, their potential evidentiary value, and he was given a blanket to cover himself, before he made statements of any kind. His handcuffs were loosened upon request. Despite his attempts to characterize this environment as coercive, Greenawalt was hardly a stranger to it: he had already been twice convicted for murder, and he knew personally most of the officers who arrested him.
 
 
 41
 While newspaper accounts about the murder of Theresa Tyson may have influenced Greenawalt's admissions, the Supreme Court has made it clear that this type of influence is not coercion within the meaning of the fifth amendment. E.g., Colorado v. Connelly, 479 U.S. 157, 170-71, 107 S.Ct. 515, 523-24, 93 L.Ed.2d 473 (1986) (rejecting a proffered "free will" analysis of coercion); Elstad, 470 U.S. at 304-05, 105 S.Ct. at 1290-91 (observing that the fifth amendment is not concerned with "moral and psychological pressures to confess emanating from sources other than official coercion"); United States v. Washington, 431 U.S. 181, 187, 97 S.Ct. 1814, 1818-19, 52 L.Ed.2d 238 (1977) ("Indeed, far from being prohibited by the Constitution, admissions of guilt by wrongdoers, if not coerced, are inherently desirable.... Absent some officially coerced self-accusation, the Fifth Amendment privilege is not violated by even the most damning admissions."). We hold that Greenawalt's initial confessions, though obtained in violation of Edwards, were nevertheless voluntary.
 
 
 42
 We reach the same conclusion about the admitted confession. No indicia of coercion were present at the time Greenawalt made his final confession, as Greenawalt appears to concede by his failure to argue the issue. Therefore, we hold that Greenawalt's final confession was both voluntary and untainted by his prior confessions, and could be admitted at trial consistent with Elstad.
 
 IV
 
 43
 Greenawalt next contends that his death sentence is unconstitutional. Most of Greenawalt's contentions are foreclosed by Walton v. Arizona, --- U.S. ----, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990) (upholding Arizona's death penalty statute), and Greenawalt conceded all but one of these contentions at oral argument. Greenawalt now contends only that the trial court failed to make the special findings of mens rea required by Enmund v. Florida, 458 U.S. 782, 801, 102 S.Ct. 3368, 3378-79, 73 L.Ed.2d 1140 (1982) (Enmund ), as well as those cases following it, Cabana v. Bullock, 474 U.S. 376, 390, 106 S.Ct. 689, 699, 88 L.Ed.2d 704 (1986) (Cabana), and Tison v. Arizona, 481 U.S. 137, 158, 107 S.Ct. 1676, 1688, 95 L.Ed.2d 127 (1987) (Tison). The issue is whether Teague prevents our consideration of the merits of this contention. As already observed, Teague held that new rules generally would not be retroactively applied to cases on collateral review. Teague, 489 U.S. at 310, 109 S.Ct. at 1074-75. Enmund was announced in 1982, the year after Greenawalt's conviction and sentence became final, so Greenawalt seeks the retroactive application of Enmund.
 
 
 44
 In Enmund, the Supreme Court held that in cases of accomplice felony murder, the eighth amendment requires a special showing of mens rea before the death penalty can be imposed. 458 U.S. at 801, 102 S.Ct. at 3378-79. Until that time, consistent with the common law, the death penalty could be imposed for felony murder without any showing of mens rea beyond that required for the underlying felony offense. Id. at 816-17, 102 S.Ct. at 3386-87 (O'Connor, J., dissenting). Enmund thus departed rather significantly from prior law, and in so doing, announced a new rule. As a new rule, Enmund is precluded from retroactive application on collateral review, unless it fits within one of Teague's two narrow exceptions.
 
 
 45
 The second exception clearly does not apply. The rule of Enmund, whatever its significance, is not a "watershed rule of criminal procedure" comparable to Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the case most often cited in connection with this second exception. Saffle, 110 S.Ct. at 1264.
 
 
 46
 The first exception "cover[s] not only rules forbidding criminal punishment of certain primary conduct but also rules prohibiting a certain category of punishment for a class of persons because of their status or offense." Penry, 492 U.S. at 330, 109 S.Ct. at 2953. We have already observed that the murders of which Greenawalt was convicted could have been proscribed by the state, see Butler, 110 S.Ct. at 1218. However, when considering the retroactivity of Enmund, we must determine whether Greenawalt falls within a class of persons, such as in Penry, that might arguably be beyond the power of the state to punish by death. Saffle, 110 S.Ct. at 1263.
 
 
 47
 Enmund holds that "the principles of proportionality embodied in the Eighth Amendment bar imposition of the death penalty upon a class of persons who may nonetheless be guilty of the crime of capital murder as defined by state law." Cabana, 474 U.S. at 385, 106 S.Ct. at 696; see also Enmund, 458 U.S. at 801, 102 S.Ct. at 3378-79 (Enmund holds that "the Eighth Amendment prohibits a State from executing a convicted felony murderer.") (O'Connor, J., dissenting). As implemented by Tison and Cabana, Enmund prohibits the sentence of death, absent a state court finding that the defendant was a "major participant in the felony committed" and exhibited a "reckless indifference to human life." Tison, 481 U.S. at 158, 107 S.Ct. at 1688. Therefore, it can be argued that Enmund announced a substantive rule, although it was implemented through new procedural requirements. See Jones v. Thigpen, 741 F.2d 805, 811 (5th Cir.1984) (finding Enmund retroactive under Linkletter, and stating that the argument that Enmund is merely procedural is patently frivolous), vacated on other grounds, 475 U.S. 1003, 106 S.Ct. 1172, 89 L.Ed.2d 292 (1986).
 
 
 48
 On the other hand, it is clear that this case presents a situation which Teague intended to cover. The Arizona courts could not have reasonably anticipated Enmund before it was announced, and accordingly, they required the state to prove only the mens rea for the underlying felony offenses. Indeed, Greenawalt was tried for felony murder, instead of murder in the first degree, after the Tison sons, who had identified Greenawalt as one of the actual triggermen, refused to testify. This approach fully complied with both the common law and the eighth amendment as theretofore interpreted. To require more now would not serve the primary purpose of habeas corpus review which, as already observed, is to encourage compliance with existing constitutional commands. Butler, 110 S.Ct. at 1217; Teague, 489 U.S. at 306, 109 S.Ct. at 1072-73.
 
 
 49
 However, we need not decide the retroactivity of Enmund, because Enmund would not change the outcome of this case. Enmund only requires a finding that the defendant was a major participant in the felony committed, and also exhibited a reckless indifference to human life. Tison, 481 U.S. at 158, 107 S.Ct. at 1688. To determine whether these findings have been made, we examine "the entire course of the state-court proceedings." Cabana, 474 U.S. at 387, 106 S.Ct. at 697.
 
 
 50
 When sentencing Greenawalt, the state trial judge said: "In the commission of the murders of John Lyons and Donnelda Lyons, [Greenawalt] knowingly created a grave risk of death to other persons in addition to those victims.... The defendant committed the offenses in an especially heinous, cruel and depraved manner." These statements satisfy Enmund's threshold requirement that Greenawalt exhibit "reckless indifference" to human life. In addition, the Arizona Supreme Court held that Greenawalt was an active participant in the felonies committed. Greenawalt I, 624 P.2d at 853. Thus, even if Enmund applies, both necessary findings were made by the state courts, and we need not remand on this issue.
 
 V
 
 51
 Greenawalt's remaining contentions are clearly without merit. Greenawalt contends that the trial court erred by failing to instruct the jury on second degree murder or any lesser included offense. He correctly observes that due process requires such an instruction when the evidence warrants it. Beck v. Alabama, 447 U.S. 625, 636-37, 100 S.Ct. 2382, 2389, 65 L.Ed.2d 392 (1980). He fails to point out the Supreme Court's subsequent clarification that "[w]here no lesser included offense exists, a lesser included offense instruction detracts from, rather than enhances, the rationality of the process. Beck does not require that result." Spaziano v. Florida, 468 U.S. 447, 455, 104 S.Ct. 3154, 3159, 82 L.Ed.2d 340 (1984).
 
 
 52
 Greenawalt was tried solely for felony murder, a crime for which Arizona law recognizes no lesser included offense. Greenawalt I, 128 Ariz. at 168, 624 P.2d at 846. Thus, this case is factually dissimilar from Vickers v. Ricketts, 798 F.2d 369, 370-71 (9th Cir.1986), cert. denied, 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 980 (1987), in which we reversed a first degree murder conviction for the failure to give a second degree instruction provided by law. Here, the trial court committed no error.
 
 
 53
 Finally, Greenawalt contends that the district court erred by failing to order, on its own motion, all exhibits relevant to pretrial publicity before ruling on Greenawalt's petition. We have already rejected this contention. In Austad v. Risley, 761 F.2d 1348, 1354 (9th Cir.) (en banc), cert. denied, 474 U.S. 856, 106 S.Ct. 163, 88 L.Ed.2d 135 (1985), we held that a petitioner must produce these exhibits himself, unless he proves his inability to do so. Greenawalt has demonstrated no such inability, so his contention is foreclosed by the rule of Austad.
 
 
 54
 Nor does the record demonstrate prejudice. A state court determination that the jury was impartial is a finding of historical fact treated as presumptively correct on collateral review. Patton v. Yount, 467 U.S. 1025, 1036-40, 104 S.Ct. 2885, 2891-94, 81 L.Ed.2d 847 (1984); 28 U.S.C. § 2254(d). The state trial court proceeded to trial after determining that Greenawalt was not prejudiced by the pretrial publicity, and this determination was upheld on direct review. Greenawalt I, 128 Ariz. at 165, 624 P.2d at 843.
 
 
 55
 Greenawalt appears to concede as much; his primary contention in this regard is that he should be entitled to introduce the publicity exhibits in support of a new habeas corpus petition. The issue of whether a future petition would be abusive is not raised by this petition. It is true that Austad considered the issue nevertheless, but the Supreme Court has recently announced a new test for abuse of the writ, McCleskey v. Zant, --- U.S. ----, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991), so we cannot rely simply on Austad.
 
 
 56
 We therefore reverse the district court's grant of petition. As we have held, nonretroactivity controls the Edwards issue. The Elstad contention fails because Greenawalt's confessions were voluntary. Most of the sentencing contentions are foreclosed by Walton, as Greenawalt conceded at oral argument, and he cannot secure reversal by his remaining sentencing contention. A lesser included offense instruction is not required for felony murder in Arizona. The district court did not need to consider publicity exhibits that Greenawalt failed to produce, and the record does not demonstrate that Greenawalt was prejudiced by pretrial publicity in any event. Thus, the State fully complied with the federal constitutional standards in force when Greenawalt exhausted direct review, so his conviction and death sentence must be upheld on collateral review.
 
 
 57
 AFFIRMED IN PART; REVERSED IN PART.