35 F.3d 572
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Darrell HART, Defendant-Appellant.
 No. 93-10509.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 13, 1994.
Decided Sept. 7, 1994.
 
 Before: FERNANDEZ, RYMER, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Darrell Hart appeals his jury conviction of bank robbery, in violation of 18 U.S.C. Sec. 2113(a), and knowing use of a firearm during the robbery, in violation of 18 U.S.C. Sec. 924(c). Hart argues that various rulings by the district court denied him the right to effectively cross-examine a government witness and prevented him from presenting his defense of mistaken identity. He also claims his trial counsel was ineffective. We affirm.
 
 
 3
 The district court did not abuse its discretion in restricting the cross-examination of Wilma Kawakami. "Generally, once cross-examination reveals sufficient information with which to appraise a witness's possible bias and motives, confrontation demands are satisfied." United States v. Bonanno, 852 F.2d 434, 439 (9th Cir.1988), cert. denied, 488 U.S. 1016 (1989); see also Skinner v. Cardwell, 564 F.2d 1381, 1389 (9th Cir.1977), cert. denied, 435 U.S. 1009 (1978). Defense counsel did not ask Kawakami if she had been questioned by police just prior to the robbery. However, the defense's direct examination of Sgt. Ribao, while limited, did establish that Ribao interviewed Kawakami approximately one-half hour before the robbery occurred concerning allegedly erroneous transactions in the credit union and that the case was pending further investigation. The details of the underlying facts of the investigation were collateral matters that the district court was justified in excluding. See Skinner, 564 F.2d at 1389; see also Carriger v. Lewis, 971 F.2d 329, 333 (9th Cir.1992) (en banc) (trial court has "considerable discretion to limit cross-examination"), cert. denied, 113 S.Ct. 1600 (1993). With the testimony of Sgt. Ribao, the jury had sufficient information to appraise any bias and motivation of Kawakami. See Skinner, 564 F.2d at 1389.
 
 
 4
 We find no reversible error in the district court's refusal to allow Hart to present the testimony of a police dispatcher and two airlines employees. The police dispatcher would have testified that she was instructed to advise airlines and financial institutions to be on the look-out for a male caucasian, pimply faced, wearing desert camouflage clothes, possibly shoulder-length hair. The airlines employees would have testified that they were on the look-out for a caucasian male after receiving this information from police.
 
 
 5
 The district court ruled the testimony was inadmissible hearsay. Assuming Hart was attempting to prove that some of the bank employees perceived the robber to be caucasian (Hart is not caucasian), there may be some question as to the hearsay nature of the proffered testimony. However, the testimony was cumulative and was essentially an indirect showing of something that was already in the record. Prior to proffering these three witnesses, Hart had already established that the police report described the robber as being caucasian and the description had been provided to police by credit union employee Lawrence Lasua. Thus, this testimony was not critical to Hart's defense, compare Chambers v. Mississippi, 410 U.S. 284, 302 (1973) (no evidence came in at trial of confessions to the crime made by another person), nor can it be said that its exclusion more likely than not affected the verdict. See United States v. Chu Kong Yin, 935 F.2d 990, 994 (9th Cir.1991).
 
 
 6
 We reject the argument that the proffered testimony should have been admitted to impeach the eyewitness identification testimony. None of the bank tellers were specifically asked to describe the race of the robber at trial. Furthermore, defense counsel never elicited a denial from any of the tellers that they had described the robber as caucasian. On cross, Diane Medeiros testified she told police the robber was "a local, but light skinned," and described Hart as light-skinned compared to many of the Hawaiian population on Molokai. Wilma Kawakami testified on cross that she described the robber's skin color as "fair." Lawrence Lasua was not asked at trial to describe the color of the robber's skin or his race. Joseph Pele, a customer in the bank, testified on cross that he described the robber to police as "hapa hoale" [mixed caucasian ancestry], with fair or lighter skin.
 
 
 7
 Neither the district court's refusal to permit the "line up" of Hart and James Vliet in front of the jury, nor the court's admonishment to counsel when he attempted to conduct the line up without prior consent of the court, constituted an abuse of discretion. The jury had two opportunities to observe Vliet--once during the testimony of Marcellus Dudoit, and a second time when Sharon Baltunado was testifying. Hart declined the district court's offer to give him the opportunity to reopen his case to call Vliet as a witness.
 
 
 8
 Furthermore, Hart was able to establish the identity of Vliet through the testimony of FBI Agent Smethurst. He also established that Vliet had been interviewed by Smethurst after the robbery. Hart complains that the district court erroneously sustained an objection to his question to Smethurst about a gun being seized from Vliet. There was no error. Smethurst had previously testified that he did not have personal knowledge about the seizure of the gun.
 
 
 9
 Hart claims ineffective assistance of counsel because his attorney did not file a motion to suppress his boots or object to their admission at trial. He contends that the boots would have been suppressed because they were not listed on the search warrant and that their seizure was not justified under the plain view doctrine. Hart raised this issue in a new trial motion, which was accompanied by an affidavit of counsel stating that counsel did not learn until after trial that the boots were not listed on the search warrant and that "in hindsight" he should have objected on the ground that the police exceeded the scope of the search warrant.
 
 
 10
 Ineffectiveness claims are more properly raised in a habeas corpus proceeding. United States v. Molina, 934 F.2d 1440, 1446 (9th Cir.1991). "We may, however, address the merits of an ineffective assistance of counsel claim on direct appeal if the record is sufficiently complete to allow us to decide the issue." Id. (internal quotation omitted). Hart's claim can be decided on the record before us and, we note that as in Molina, his claim was raised in the new trial motion. See id. at 1447.
 
 
 11
 Even assuming deficient performance by counsel, Hart cannot make the required showing of prejudice. See id. (citing Strickland v. Washington, 466 U.S. 668, 694 (1984)). The boots, which were located on the front porch of Hart's residence, were admissible under the plain view doctrine. The officers did not go beyond the scope of the search warrant, which would entitle them to search every object that could hold currency, including boots. FBI Agent Smethurst authorized the seizure of the boots when he recognized the tread pattern as matching the footprint in the dirt identified by an eyewitness. We therefore reject Hart's argument that the initial intrusion was unlawful and that the incriminatory nature of the evidence was not immediately apparent to the officers. See Horton v. California, 496 U.S. 128, 136-37 (1990) (officers may seize evidence under plain view doctrine if it is in plain view, its incriminating character is immediately apparent, and the officer had a legitimate right of access to the object); compare Arizona v. Hicks, 480 U.S. 321, 324-25 (1987) (officers moving of stereo equipment in apartment to view serial numbers constituted a separate and unlawful search from the lawful search for a shooter). Because the boots were admissible, the failure to file a motion to suppress them was not prejudicial.
 
 
 12
 Furthermore, as the district court observed in denying the new trial motion, there was overwhelming evidence against Hart even without the boots. The tellers recognized Hart, whose wife was a member of the credit union. The eyewitness identification testimony was very strong and assuming counsel was deficient in failing to file a motion to suppress, this does not "undermine confidence in the outcome" of this case. See Strickland, 466 U.S. at 694.
 
 
 13
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3