116 F.3d 483
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
John Gilbert FREEMAN, Sr., Petitioner-Appellant,
v.
James UPCHURCH, Warden; Attorney General for the State of
Arizona, Respondents-Appellees.
 No. 95-15760.
 United States Court of Appeals, Ninth Circuit.
 Submitted February 14, 1997**
June 16, 1997.
 
 Appeal from the United States District Court for the District of Arizona, D.C. No. CV 93-01308-RCB(SLV); Robert C. Broomfield, District Judge, Presiding.
 Before HUG, THOMPSON and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 John Gilbert Freeman, a state prisoner, appeals the district court's denial of his first federal habeas corpus petition. We have jurisdiction pursuant to 28 U.S.C. § 2253, and we affirm.[1]
 
 FACTS
 
 3
 A jury found Freeman guilty on seven counts of first degree murder. The state trial court sentenced him to seven consecutive life terms. Apparently, Freeman believed his wife left him for one of his former employees. Freeman shot and killed seven members of the former employee's family. The evidence that Freeman shot the victims was overwhelming and essentially not contested. Although Freeman pleaded not guilty and not guilty by reason of insanity, the only issue at trial was whether Freeman was sane at the time of the murders.
 
 
 4
 The Arizona Supreme Court affirmed his conviction and sentence. State v. Freeman, 559 P.2d 152 (Ariz.1976). The state trial court and appellate court denied his first state post-conviction petition. The Arizona Supreme Court denied review.
 
 
 5
 Freeman then filed his first federal petition with the district court. The district court granted the State's summary judgment motion and dismissed the petition. Freeman now appeals.
 
 DISCUSSION
 A. General Standards of Review
 
 6
 We review de novo the district court's denial of Freeman's habeas corpus petition. Weygandt v. Ducharme, 774 F.2d 1491, 1493 (9th Cir.1985). We review for clear error any factual findings made by the district court, and the state court's factual findings are entitled to a presumption of correctness. Bonin v. Calderon, 59 F.3d 815, 823 (9th Cir.1995), cert. denied, 116 S.Ct. 718 (1996); Melugin v. Hames, 38 F.3d 1478, 1482 (9th Cir.1994). PH0H B. Procedural Default
 
 
 7
 The district court did not address the merits of most of Freeman's claims because the district court determined he was procedurally barred from raising the claims in federal court. We agree.
 
 
 8
 In his federal petition, Freeman raises eighteen claims and arguably raises several ineffective assistance of counsel claims. The district court determined Freeman was procedurally barred from raising twelve of these claims.[2] Addressing Freeman's state post-conviction petition, the state appellate court determined Freeman had procedurally defaulted these claims pursuant to Arizona Rule of Criminal Procedure 32.2. The state appellate court determined Freeman had waived the claims because the claims involved pretrial and trial error and Freeman failed to raise the claims on direct appeal. See 17 Ariz.Crim.P. 32.2 (1987).
 
 
 9
 If Freeman defaulted his claims pursuant to an independent and adequate state procedural rule, we will not review the merits of the claims unless he demonstrates cause and prejudice or an actual miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991).
 
 
 10
 To determine whether the procedural default was independently based on Rule 32.2, we analyze the state appellate court's decision. Because the Arizona Supreme Court denied review without comment, we "lock[ ] through" that denial to the state appellate court's decision. Ylst v. Nunnemaker, 501 U.S. 797, 804 (1991). The independent prong is clearly satisfied in the present case because the state appellate court relied only on Rule 32.2 to dispose of the twelve claims. See Coleman, 501 U.S. at 732-35.
 
 
 11
 The adequate prong also is satisfied. To satisfy this prong, the state courts must "consistently appl[y]" Rule 32.2. Wells v. Maass, 28 F.3d 1005, 1010 (9th Cir.1994). We previously have concluded Arizona's reliance on Rule 32.2 is not "so unpredictable and irregular that it does not provide an adequate ground...." Carriger v. Lewis, 971 F.2d 329, 333 (9th Cir.1992), cert. denied, 507 U.S. 992 (1993). Because Rule 32.2 serves as an independent and adequate state procedural bar, federal review of Freeman's claims is prohibited unless Freeman demonstrates cause and prejudice or an actual miscarriage of justice. See Coleman, 501 U.S. at 729-30, 750.
 
 
 12
 Freeman has not demonstrated cause and prejudice. As discussed below, Freeman has not shown that he received ineffective assistance of counsel during his trial or on direct appeal. Nor would an actual miscarriage of justice occur. The evidence was overwhelming that Freeman is not factually innocent of the murders. We, therefore, address the merits only of the claims raised by Freeman on direct appeal, the single claim addressed on the merits by the state appellate court, and the ineffective assistance claims.
 
 C. Sandstrom Instructional Error
 
 13
 The State concedes that a jury instruction given during Freeman's trial violated Sandstrom v. Montana, 442 U.S. 510 (1979) (concluding mandatory presumptions are unconstitutional). The erroneous jury instruction stated:
 
 
 14
 Where it is shown that the homicide has been committed with a deadly weapon and no circumstances in mitigation, justification, or excuse appear, the law implies malice.
 
 
 15
 The district court determined that the holding in Sandstrom constituted a "new rule" which could not be retroactively applied on collateral review. See Teague v. Lane, 489 U.S. 288 (1989). We need not determine whether the holding in Sandstrom announced a "new rule" under Teague because any error was harmless. See California v. Roy, 117 S.Ct. 337, 339 (1996); Roy v. Gomez, 1997 WL 87877, at * 1 (9th Cir. Mar. 4, 1997).
 
 
 16
 The only dispute at trial was whether Freeman was sane at the time of the murders. By finding Freeman was sane at the time of the murders, there was no question that Freeman intended to kill the victims. Freeman himself presented evidence that the motivation for the killings was revenge. Any error did not have a "substantial and injurious effect" on the verdict. Roy, 117 S.Ct. at 338 (quoting Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).
 
 D. Speedy Trial
 
 17
 Freeman argues he was denied his Sixth Amendment right to a speedy trial. Although there was a significant delay between the filing of the complaint and trial, there was no constitutional violation.
 
 
 18
 Freeman was arrested immediately after the murders in September 1971 and a complaint was filed the next day. The state trial court appointed counsel and ordered a mental examination of Freeman. In January 1972, Freeman was found incompetent to stand trial and was sent to a state hospital.
 
 
 19
 In March 1974, the state hospital notified the state trial court that Freeman was competent to stand trial. Prior to the competency hearing, Freeman's counsel moved to dismiss the complaint, arguing Freeman's speedy trial rights were violated. In April 1974, the state trial court granted the motion and the State refiled new charges. Freeman's counsel renewed the motion to dismiss and, in June 1974, the state trial court again granted the motion.
 
 
 20
 The State appealed the dismissal to the Arizona Supreme Court. In November 1974, the Arizona Supreme Court concluded the trial court was without jurisdiction to dismiss the complaint because Freeman was not yet judged competent and, thus, unable to assist in the motion to dismiss. See State ex rel. Berger v. Superior Court, 526 P.2d 1234, 1237-38 (Ariz.1974). In February 1975, the state trial court determined Freeman was competent to stand trial and trial commenced in April 1975.
 
 
 21
 We balance the following factors in determining whether Freeman's constitutional right to a speedy trial was violated: "[l]ength of delay, the reason for the delay, the [petitioner's] assertion of his right, and prejudice to the [petitioner]." Barker v. Wingo, 407 U.S. 514, 530 (1972). The degree of prejudice, if any, that must be shown is dependent upon whether the State acted diligently or negligently in bringing Freeman to trial. See United States v. Aguirre, 994 F.2d 1454, 1456 (9th Cir.), cert. denied, 510 U.S. 1029 (1993). If the State acted with reasonable diligence, the speedy trial claim generally fails unless Freeman demonstrates the delay caused specific prejudice. Id.
 
 
 22
 Although the delay of approximately four years is significant, the State acted diligently in bringing Freeman to trial. The Arizona Supreme Court found that Freeman was "evaluated at regular intervals" with a goal towards proceeding to trial and his mental condition began to improve shortly after admittance to the hospital, to the point that he was competent to stand trial. See Freeman, 559 P.2d at 160. Further, some of the delay was attributable to Freeman's motion to dismiss and the appeal of the dismissal to the Arizona Supreme Court.
 
 
 23
 Freeman also has not demonstrated prejudice. Freeman asserts that a potential witness, Doctor Breitner, died during the delay and that Doctor Breitner examined him shortly after the murders and formed the opinion that Freeman was insane at the time of the murders. However, as found by the Arizona Supreme Court, there is no evidence that Doctor Breitner is dead and Doctor Breitner's reports that are part of the record address Freeman's competency to stand trial but do not opine that Freeman was insane at the time of the murders. See Freeman, 559 P.2d at 160. Further, at trial, Freeman presented four experts who had examined him shortly after the murders. These experts testified Freeman was insane at the time of the murders. Id. at 160-61. Thus, even if Doctor Breitner would have testified Freeman was insane, the testimony would have been merely cumulative. PH0H E. Doctor Hoogerbeets's Testimony
 
 
 24
 Freeman argues Doctor Hoogerbeets's testimony, given during his trial, violated his Fifth Amendment rights. Assuming the testimony violated his constitutional rights, any error was harmless.
 
 
 25
 Doctor Hoogerbeets examined Freeman to determine his competency to stand trial. As a rebuttal witness to Freeman's mental health experts, Doctor Hoogerbeets testified that Freeman was sane at the time of the murders and that, in his opinion, the reason Freeman killed the victims was as an "act of revenge." See id. at 163. Doctor Hoogerbeets testified he formed this opinion based, in part, on "his own evaluation" of Freeman.
 
 
 26
 Freeman argues the testimony regarding revenge violated his Fifth Amendment rights. At trial, however, Freeman's own experts testified that Freeman was motivated by revenge. Further, as stated by the Arizona Supreme Court, "the entire factual setting of the case compels the conclusion that [Freeman] was motivated by revenge." Id. at 164. In these circumstances, Doctor Hoogerbeets's testimony that Freeman was motivated by revenge did not have a "substantial and injurious effect" on the verdict. Brecht, 507 at 637.
 
 F. Prosecutor's Closing Argument
 
 27
 Freeman argues that comments made by the prosecutor during closing argument violated his due process rights. Improper comments made by the prosecutor do not violate a petitioner's constitutional rights unless the comments " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " Turner v. Marshall, 63 F.3d 807, 817-18 (9th Cir.1995) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1979)).
 
 
 28
 While waiving apparently gruesome photographs of the victims, the prosecutor stated Freeman wanted one of the victims to call him "Uncle John" and, referring to Freeman, stated, "Here's what old Uncle John did." See Freeman, 559 P.2d at 165.
 
 
 29
 Even if arguably inflammatory, the statements did not render Freeman's trial fundamentally unfair. See Darden v. Wainwright, 477 U.S. 168, 180 n. 11, 12 (1986). The only issue at trial was Freeman's sanity. The photographs had been admitted during trial[3] and the state trial court instructed the jury that comments made during oral argument are not evidence.
 
 G. Ineffective Assistance of Counsel
 
 30
 Freeman contends he received ineffective assistance of counsel during his trial and on direct appeal. We disagree.
 
 
 31
 Because a claim of ineffective assistance raises a mixed question of law and fact, we review the claim de novo. Harris v. Wood, 64 F.3d 1432, 1435 (9th Cir.1995). Freeman first must establish that his " 'counsel's representation fell below an objective standard of reasonableness ... considering all the circumstances ... under prevailing professional norms.' " Id. (quoting Strickland v. Washington, 466 U.S. 668, 688 (1984)). He must overcome a "strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in making decisions." Thompson v. Calderon, 86 F.3d 1509, 1515 (9th Cir.1996).
 
 
 32
 Freeman also must establish prejudice resulted from the deficient performance. Id. He must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.
 
 
 33
 Freeman points to a number of instances in which he argues his state trial counsel was ineffective. In claims 4 and 7, Freeman argues his trial counsel refused to allow him to testify and the state trial court refused to allow his counsel to tape record interviews with the State's witnesses. The district court found these claims to be factually incorrect. The record indicates Freeman chose not to testify and the state trial court allowed Freeman's counsel to tape record the interviews if the witnesses consented. Freeman has not demonstrated these findings are clearly erroneous.
 
 
 34
 In claim 5, Freeman argues his state trial counsel failed to move for a redetermination of probable cause before the grand jury to allow the grand jury to consider his mental state at the time of the murders. Freeman has not demonstrated prejudice. The petit jury found the State proved Freeman's guilt beyond a reasonable doubt.
 
 
 35
 In claim 9, Freeman argues the state trial court erroneously admitted lay witness opinion testimony on his sanity and his trial counsel failed to object. There was nothing improper about lay witnesses testifying as to Freeman's sanity; thus, failing to object was not constitutionally deficient performance. See United States v. Segna, 555 F.2d 226, 230 (9th Cir.1977).
 
 
 36
 In claim 10, Freeman argues the state trial court erred by instructing the jury on how to assess expert testimony and his counsel failed to object. Apparently, Freeman is arguing that the state trial court "singled out" expert testimony by giving a separate instruction on assessing expert testimony. Freeman asserts this was error because "all witnesses should be treated the same." Giving a separate expert witness instruction beyond the general instruction on assessing witness testimony is not erroneous. Failing to object to the instruction does not amount to constitutionally deficient performance.
 
 
 37
 Finally, Freeman's appellate counsel did not render constitutionally deficient assistance by failing to raise claims 8, 9, 10, 11, 13, 15, and 17 on direct appeal. These claims appear meritless or less persuasive and appellate counsel is not deficient by "weeding out" less meritorious claims. See Miller v. Keeney, 882 F.2d 1428, 1434 (9th Cir.1989). Even if appellant counsel's performance was deficient, Freeman was not prejudiced in light of the overwhelming evidence of guilt and the improbability that, had his counsel raised these claims on direct appeal, the conviction would have been reversed.
 
 
 38
 Freeman also was not prejudiced by appellate counsel's failure to raise claim 12, the Sandstrom error claim, on direct appeal. This claim was raised, addressed, and rejected by both the state trial court and appellate court during the post-conviction proceedings.
 
 H. M'Naughten Test
 
 39
 Freeman also argues the M'Naughten test for insanity is unconstitutional. Freeman has not exhausted this claim by presenting the claim to the state courts. However, because the claim is clearly frivolous, we address the argument and reject the claim. See Hunt v. Eyman, 405 F.2d 384, 385 (9th Cir.1969), cert. denied, 394 U.S. 1020 (1969) (concluding M'Naughten test is not unconstitutional); Gutierrez v. Griggs, 695 F.2d 1195, 1198 (9th Cir.1983) (concluding federal court may address unexhausted claim if clearly frivolous).
 
 
 40
 AFFIRMED.
 
 
 
 **
 The panel unanimously finds this case suitable for disposition without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Freeman has filed a motion to file supplemental information and affidavits. We grant the motion
 
 
 [2]
 These are claims 3, 4, 5, 7, 8, 9, 10, 11, 13, 15, 16, and 17
 
 
 [3]
 To the extent Freeman argues the state trial court violated his due process rights by admitting the photographs, we disagree. The admission of the photographs did not render his trial fundamentally unfair. See Butcher v. Marguez, 758 F.2d 373, 378 (9th Cir.1985). The only issue at trial was Freeman's sanity. The evidence was overwhelming that he committed the murders